Case 4:20-cv-02310   Document 69   Filed on 08/16/23 in TXSD   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
August 16, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| QUINTILLION SUBSEA OPERATIONS, LLC § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 4:20-cv-02310 |
| § | |
| MARITECH PROJECT SERVICES, LTD., MI, § LTD., § § | |
| Defendants. § § | |

# MEMORANDUM AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion for Default Judgment. ECF 67. Having considered the submissions and the applicable law, it is RECOMMENDED that the Motion be GRANTED, as follows.[1]

## I.  Background

Plaintiff Quintillion Subsea Operations, LLC ("Quintillion"), a Delaware company with its principal place of business in Alaska, is a telecommunications operator that provides high-speed broadband connectivity in the Arctic and across the globe. ECF 62 at ¶¶ 2, 9. Quintillion operates and maintains a subsea fiber optic cable system consisting of 1,200 miles of submarine fiber optic cable between Nome and Prudhoe Bay, Alaska. *Id*. at ¶ 9. The allegations set forth herein are contained

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 21.

1

in Quintillion's First Amended Complaint and support a valid claim for relief against Defendants. *Id.*

On October 12, 2017, Quintillion issued a Request for Quotation seeking a contractor to provide on-going repair and maintenance services for its subsea cable system. *Id.* at ¶ 10. On November 3, 2017, MI submitted a detailed proposal (the "Proposal") stating it could provide one marine platform for shallow water intervention, one marine platform for deep water intervention, a local managing office in Anchorage, Alaska, storage of appropriate equipment, and local support. *Id.* at ¶ 15. According to the Proposal, MI would use the MV Ocean Investigator vessel to provide the deep-water services and the Marpro 1 vessel for the shallow water intervention. *Id.* MI represented in the Proposal that both vessels would mobilize within 24 hours if the vessels were free or within 24 hours upon their return to their base port if they were undergoing repair operations. *Id.* at ¶ 16. Quintillion elected to award a maintenance services contract to MI based on the Proposal, representations and other information provided by MI to Plaintiff. *Id.* at ¶ 18.

While negotiating the terms of the contract with Quintillion, Maritech representatives explained that a new vessel, the Alaska Scout, would be used to perform shallow repairs and tow the Marpo 1 barge. *Id.* at ¶ 19. Representatives from both MI and MPS "misrepresented Maritech's ability to perform these obligations," specifically by misrepresenting that (1) the Alaska Scout had the

required Certificate of Inspection (COI) at the time of the negotiations; (2) the Alaska Scout was able to act as a towing vessel; and (3) the Alaska Scout was in a sufficient condition to timely perform under the terms of the contract. *Id.* at ¶¶ 22-25. On July 1, 2018, MPS entered into a Marine Maintenance Services Agreement ("MMSA") by which MPS agreed to provide maintenance services for Plaintiff for four years, with 2018 involving only shallow water services and 2019-2021 involving shallow and deep-water services. *Id*. at ¶ 26.

Over the course of the next year, Maritech failed to deliver the Alaska Scout or an adequate substitute as required by the MMSA and it informed Plaintiff that it would not be able to deliver either the Shallow Water Platform or the Deep Water Platform by the dates it had agreed to deliver them in 2018-2019. *Id.* at ¶¶ 27-33. Maritech continued to mislead Quintillion concerning the Alaska Scout's COI, its capacity to act as a towing vessel, its condition, and its progress in traveling to Alaska. *Id.* at ¶¶ 26-50. Further, Maritech representatives sent multiple reports falsely claiming that the Ocean Investigator—the barge to be used for deep-water repairs under the MMSA—would be available by June 1, 2019, when in fact it was under contract with a third party through July 6, 2019 at the earliest. *Id.* at ¶¶ 54-55. Quintillion sent formal notice of default to both MI and MPS on June 18, 2019. *Id.* at ¶ 58. Quintillion then terminated the MMSA and entered into separate one-year

3

agreements with other companies to replace the services Maritech had agreed in the MMSA to provide through 2021. *Id.* at ¶¶ 59-60.

Quintillion filed suit against MPS and MI for breach of contract and violation of the Alaska Unfair Trade Practices and Consumer Protection Act (AUTPA), Alaska Stat. § 45.50.471. After extensive jurisdictional discovery and motion practice, defense counsel withdrew from representation of Defendants on March 7, 2023 (ECF 61), Quintillion filed an Amended Complaint on March 9, 2023 (ECF 62), and default was ultimately entered against Defendants on March 29, 2023. ECF 65. Plaintiff now moves for default judgment against both Defendants. ECF 67.

## II.  Default Judgment Standards

Federal Rule of Civil Procedure 55(a) grants courts authority to enter default judgment against a defendant who fails to plead or otherwise defend itself. In exercising its discretion to enter a default judgment, the Court must determine "(1) whether default judgment is procedurally warranted; (2) whether [Plaintiffs'] complaint sets forth facts sufficient to establish that it is entitled to relief; and (3) what form of relief, if any, [Plaintiffs] should receive." *Joe Hand Promotions, Inc. v. Fusion Hookah, LLC*, No. 1:19-CV-618-RP, 2020 WL 6876208, at *1 (W.D. Tex. Nov. 23, 2020). To determine whether default judgment is procedurally warranted, courts in the Fifth Circuit must consider six factors: "[1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the

grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion." *Id.* at *2 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). To determine whether Plaintiff has set forth sufficient facts establishing that it is entitled to relief, the court simply looks at whether the well-pleaded factual allegations in the Plaintiff's Complaint establish a valid cause of action. *Id.* (citing *Nishimatsu Const. Co., Ltd. v. Hous. Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The third determination requires the Court to award only the relief prayed for in the Complaint as required by Federal Rule of Civil Procedure 54(c). *Id.* at *3.

A defendant's default establishes only liability, not the amount of damages. *Id.* (citing *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Damages will ordinarily not be awarded absent a hearing or a demonstration by detailed affidavits establishing the necessary facts. *Id.* (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979).

### III. Analysis

#### A. Default judgment is procedurally warranted.

Consideration of the six *Lindsey* factors establishes that a default judgment is procedurally warranted. First, although Defendants raised legal defenses in their Motions to Dismiss such as lack of jurisdiction and pre-emption, those motions were

denied either with or without prejudice. By failing to have new counsel appear, Defendants have abandoned the legal defenses which were denied without prejudice in the Court's orders on Defendants' motions to dismiss. The Court is unaware of any disputed issues of material fact as the Defendants did not answer the Amended Complaint and responded to the Complaint with motions to dismiss that raised jurisdictional and legal challenges to Quintillion's ability to recover. Second, default judgment does not substantially prejudice Defendants because their own inaction "has ground the adversary process to a halt." *Id.* at *2.

Third, grounds for default have been clearly established. This case was originally filed on June 30, 2020. On September 21, 2020 and while represented by counsel, Defendants moved under Rule 12(b)(6) to dismiss all claims against MI for lack of personal jurisdiction, and to dismiss Quintillion's claim against both Defendants for violation of the Alaska Unfair Trade Practices and Consumer Protection Act (AUTPA). ECF 6. On June 18, 2021, after a conference at which all counsel appeared and the Court heard argument regarding discovery disputes and a motion for sanctions, the Court denied Defendants' Motion to Dismiss without prejudice to refiling. ECF 26. The Defendants filed an Amended Motion to Dismiss on March 17, 2022. ECF 36. Briefing on the Amended Motion to Dismiss was completed in September 2022. ECF 36-49. On January 24, 2023 the Court (1) denied Defendants' Amended Motion to Dismiss for lack of personal jurisdiction

6

(ECF 52 (adopting the Magistrate Judge's Memorandum and Recommendations (ECF 50)) and (2) granted Defendants' Motion to Dismiss Plaintiff's AUTPA claims, permitting Quintillion to replead the claim to satisfy the requirements of Federal Rule of Civil Procedure 9 (ECF 53 (adopting the Magistrate Judge's Memorandum and Recommendations (ECF 51)).

On January 25, 2023 Liskow & Lewis moved to withdraw as counsel for Defendants, representing that Defendants "ha[d] failed to pay the agreed upon fees in exchange for counsel's services after notice to Defendants of such failure." ECF 54. The Court denied the Motion without prejudice on January 26, 2023 (ECF 55). Noting that "corporate entities, such as Defendants, cannot appear in federal court unless represented by a licensed attorney," the Order granted a request for a 30-day stay of activity to allow Defendants to engage new counsel, and set a status conference for March 7, 2023. *Id.* (citing *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004)). At the March 7 Conference, attorneys for Liskow & Lewis represented to the Court that Defendants had not obtained substitute counsel. The Court issued an Order that same day (ECF 61), (1) granting Liskow & Lewis' renewed Motion to Withdraw (ECF 58); (2) scheduling a status conference for March 21, 2023; (3) ordering that new counsel for Defendants appear at the conference; (4) requiring Liskow & Lewis to deliver a copy of the scheduling Order and any Amended Complaint filed by Plaintiff; and (5) providing that failure of

7

Defendants' new counsel to appear at the March 21, 2023 Conference "will result in sanctions up to and including the striking of Defendants' pleadings and the entry of default against Defendants."

Defendants did not appear at the March 21, 2023 Conference, nor did they file any Response to Plaintiff's March 9, 2023 Amended Complaint. *See* ECF 62 at 25 (certifying that Plaintiff, in addition to serving Liskow & Lewis, mailed copies of the Amended Complaint to Defendants' last known address and registered address). Plaintiff requested the entry of default on March 27 (ECF 63), the Court directed the Clerk to enter default against Defendants on March 28 (ECF 64), and default was entered against Defendants on March 29 (ECF 65).

Plaintiff sent letters to Defendants' registered addresses on April 3, 2023, notifying them of the entry of default and of Plaintiff's intention to file a motion for default judgment. ECF 67-1 at 3 (¶¶ 3-4), 6-18. Plaintiff also emailed the letter to email addresses believed to be associated with Defendants based on previous production in this case. *Id.* at 3 (¶ 7); *compare id.* at 25 *with* ECF 41-18 (containing email addresses of various Maritech officers). Plaintiff's counsel certifies that he received "bounce back" notifications for all email addresses except for that of Dimitri Skaftouros (ECF 67-1 at 3 (¶ 7)), the sole owner of the holdings company that owns both Defendants. ECF 42-4. Defendants have not appeared or made any filings in this matter since the termination of Liskow & Lewis on March 7, 2023.

8

Approximately five months have passed since Defendants' counsel withdrew from this case and the Court ordered Defendants to have new counsel appear. In light of this record, the Court cannot conceive that Defendants' default was the result of a good faith mistake or excusable neglect.

With respect to the fifth *Lindsay* factor, the harshness of a default judgment, the Court finds that although the amount of the requested judgment is large, it reflects a trebling of actual damages provided for under the AUTPA. Thus, the amount of damages requested is not overly harsh. In addition, the extensive record in this case demonstrates that Defendants are fully aware of the allegations and causes of action asserted against them, fully participated in jurisdictional discovery and initial motion practice, and then chose to abandon their defense of the litigation. Under these circumstances, the entry of a default judgment is not unduly harsh.

Finally, as to the last *Lindsay* factor, the record clearly demonstrates a willful default by Defendants. As a result, the Defendants cannot demonstrate good cause to set aside a default judgment. *See Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000) ("A finding of willful default ends the [good cause to set aside a default] inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'" (quoting *In re Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992))).

9

### B. Plaintiff's Amended Complaint establishes its entitlement to relief.

Quintillion has elected to seek default judgment against the Defendants on the AUTPA claim. ECF 67-5. To state a claim under AUTPA, a plaintiff must prove that (1) the defendants are engaged in trade or commerce; and (2) that an unfair act or practice has occurred in the conduct of trade or commerce. *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1255 (Alaska 2007). AUTPA includes 57 categories of "unfair practices," including the following:

> (6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
>
> * * *
>
> (12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged;
>
> * * *
>
> (15) knowingly making false or misleading statements concerning the need for parts, replacement, or repair service[.]

ALASKA STAT. § 45.50.471(b). The AUTPA applies to commercial transactions between businesses. *W. Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.*, 101 P.3d 1047, 1053-54 (Alaska 2004).

The Amended Complaint alleges that the operations of MPS and MI were intertwined, many individuals acted on behalf of both Maritech entities, and that Quintillion is "unable to disentangle the activities of each Maritech entity." ECF 62 at ¶ 5. The Amended Complaint also alleges that MI is the alter ego of MPS and that MPS was created as a sham by MI intended to deceive Quintillion and evade responsibility for the representations made in connection with the MMSA. *Id.* at ¶ 8. Thus, the Complaint refers to MI and MPS collectively as "Maritech." *Id.* at ¶ 5.

Quintillion alleges various misrepresentations by Maritech as well as the concealment/omission of material information, both before and after the execution of the MMSA. *Id.* at ¶¶ 14-57. Quintillion describes three "categories" of misrepresentations prior to the MMSA's execution: "(1) whether the Alaska Scout had the necessary [Certificate of Inspection]; (2) the Alaska Scout's ability to act as a towing vessel; and (3) the condition of the Alaska Scout and its need for repairs." *Id.* at ¶ 21. Specifically, the Amended Complaint cites to misleading statements made during the negotiation process by Defendant representatives Nota Kalpinou and Dimitri Skaftouros on April 3, 2018 and May 4, 2018 concerning the status of the Alaska Scout's Certificate of Inspection. *Id.* at ¶ 25. Quintillion contends that, despite Maritech's representations and designation of the Alaska Scout in the

MMSA as a towing vessel (ECF 41-15 at 4), it "was never capable of acting as a towing vessel." *Id.* at ¶ 38.

The Amended Complaint also alleges that, after the execution of the MMSA, Maritech both withheld information from and actively misled Quintillion about the condition of the Alaska Scout and the availability of the Ocean Investigator. *Id.* at ¶¶ 32-57. Specifically, in August and September 2018 and at the direction of Byron Skaftouros, Defendants misled Quintillion about the source of damage to the Alaska Scout, representing that certain longstanding damage to the vessel was caused by severe weather on August 11, 2018. *Id.* at ¶¶ 40-44. And, in March and April 2019, Defendants misrepresented the availability of the Ocean Investigator, stating to Quintillion that the vessel was available as early as June 1, 2019, even though the vessel was in fact under contract until July 6, 2019. *Id.* at ¶¶ 53-55.

The First Amended Complaint alleges specific conduct by individuals acting on behalf of Maritech (MI and MPS) which establishes that Quintillion is entitled to relief on its AUTPA claim against Defendants. *Id.* at ¶¶ 14-73.

### C. Plaintiff is entitled to the relief sought.

#### 1. Actual and Treble Damages

Quintillion seeks treble damages under AUTPA. ECF 67 at 8-9. AUTPA provides:

> A person who suffers an ascertainable loss of money or property as a result of another person's act or practice

12

> declared unlawful by AS 45.50.471 may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater.

ALASKA STAT. § 45.50.531(a). Treble damages under AUTPA are awarded "as a matter of course." *Denison*, 167 P.3d at 1259.

In support of its claim for damages, Quintillion submits an affidavit from its Chief Technology Officer, Matthew Peterson. ECF 67-2 at ¶ 1. Peterson asserts that Defendants were obligated to provide services under the MMSA "starting in 2018 and through at least the 2021 maintenance season." *Id.* at ¶ 2; *see also* ECF 41-15 at 2 (providing that Maritech offered Quintillion a "firm four (4) year shallow water maintenance solution starting July 1, 2018). Peterson estimates Quintillion's damages caused by Defendants' failure to perform under the MMSA as follows:

- **2018—$352,000** – The total amount Quintillion paid to Defendants in 2018 for services it did not receive.

- **2019—$0**. Quintillion contracted for replacement services that did not cost it more than it would have paid to Defendants under the MMSA.

- **2020—$3,399,000** - The difference between the $4,799,000 Quintillion paid for replacement services and the $1,400,000 it would have paid to Defendants under the MMSA.

- **2021—$2,942,266** - The difference between the $4,392,265 Quintillion paid for replacement services and the $1,450,000 it would have paid under the MMSA.

ECF 67-2 at ¶¶ 7, 9-11, 13-14. Thus, Peterson's Declaration sufficiently establishes Quintillion's total actual damages incurred during the 2018-2021 maintenance

seasons as $6,693,266.00. *Id.* at ¶ 16. The AUTPA provides for three times the actual damages of $6,693,266.00. Thus, Peterson's Declaration establishes that Quintillion is entitled to a treble damage award of $20,079,798.00 ($6,693,266.00 x 3).

### 2. Attorney's fees and costs

Plaintiff also seeks attorney's fees pursuant to its AUTPA claim. ECF 67-5 at ¶ 3. AUTPA provides that a prevailing plaintiff in an action brought under Alaska Stat. § 45.50.471 "shall be awarded costs as provided by court rule and full reasonable attorney fees at the prevailing reasonable rate." Counsel for Quintillion has submitted an Attorneys' Fees Declaration from Reynolds Frizzell, LLP Partner Jeremy Doyle. Mr. Doyle's Attorneys' Fees Declaration sets forth the qualifications and experience of the individuals in the firm who worked on the case. *Id*. at ¶¶ 5-10. Mr. Doyle attests in the Declaration to his familiarity with the factors to be considered in determining the reasonableness of attorneys' fees. *Id*. at ¶ 11. He also declares that the rates charged by the individuals in the firm and set forth in the declaration are "comparable with the rates charged by Houston attorneys with comparable skill and experience involved in matters of similar novelty and complexity during the relevant time periods." *Id*. at ¶¶ 11-12. Mr. Doyle declares that in connection with its AUTPA claim Quintillion has incurred $389,287.00 in reasonable attorney's fees and $16,224.91 in reasonable litigation costs. *Id*. at ¶¶ 18-

14

20. According to the Declaration, a "substantial majority of its fees" were incurred in connection with Defendants' dispute of personal jurisdiction (ECF 6; ECF 36) and because Defendants "unnecessarily prolonged and obstructed the jurisdictional discovery process." ECF 67-3 at ¶ 23; *see also* ECF 19; ECF 43 (Quintillion's Motions for Sanctions in connection with Defendants' discovery practices). With respect to costs, Quintillion has produced invoices for expenses meeting the definition of "costs" under 28 U.S.C. § 1920. ECF 67-3 at 49-80. Thus, the Attorneys' Fees Declaration supports an award of $389,287.00 for attorney's fees and $16,224.91 in litigation costs, for a total award of reasonable and necessary attorneys' fees and costs in connection with the AUTPA claim of $405,511.91. *Id.* at ¶ 20.

### 3. Prejudgment interest

Under Alaska law, prejudgment interest "must be awarded . . . absent extraordinary circumstances." *Alaska Interstate Const., LLC v. Pac. Diversified Investments, Inc.*, 279 P.3d 1156, 1181 (Alaska 2012). For claims involving purely economic loss damages such as "loss of bargain" damages, prejudgment interest begins to accrue on the date of the injury. *Beaux v. Jacob*, 30 P.3d 90, 100-01 (Alaska 2001). Absent an agreement to the contrary, prejudgment interest is calculated at "three percentage points above the 12th Federal Reserve District

discount rate in effect on January 2 of the year in which the judgment or decree is entered." ALASKA STAT. § 09.30.070(a).

Quintillion seeks a total of $1,170,065.16 in prejudgment interest in connection with its AUTPA claim as of the time of its Motion. ECF 67-2 at ¶ 17. In support of this award, Peterson identifies accrual dates for the commencement of prejudgment interest of: November 15, 2018 (the date at which Defendants' 2018 performance came due under the MMSA); September 15, 2020 (the approximate date at which Quintillion finished its payment for replacement services for 2020); and October 1, 2021 (the date at which Quintillion finished making its payment for replacement services in 2021). *Id.* at ¶¶ 7, 11, 15. Quintillion also identifies 7.5% as the applicable rate under Alaska law, assuming that judgment is entered in calendar year 2023. Peterson's Declaration sufficiently supports an award of prejudgment interest to be calculated according to the total of the following:

- [daily prejudgment interest] x [the number of days from November 15, 2018 until the day on which judgment is entered]. Daily prejudgment interest for this section is $72.33, calculated as follows: ($352,000.00 x (7.50% / 365)).
- [daily prejudgment interest] x [the number of days from September 15, 2020 until the day on which judgment is entered]. Daily prejudgment interest for this section is $698.42, calculated as follows: ($3,399,000.00 x (7.50% / 365)).

- [daily prejudgment interest] x [the number of days from October 1, 2021 until the day on which judgment is entered]. Daily prejudgment interest for this section is $604.58, calculated as follows: ($2,942,266.00 x (7.50% / 365)).

## IV. Conclusion and Recommendation

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Default Judgment be GRANTED, as follows:

- That judgment by default be entered in favor of Plaintiff, Quintillion Subsea Operations, LLC and against Defendants Maritech Project Services, Ltd. and Maritech International, Ltd.;

- That Plaintiff recover trebled damages of $20,079,798.00, pursuant to ALASKA STAT. § 45.50.531(a).

- That Plaintiff recover prejudgment interest from Defendants as follows:
    - $72.33 x [the number of days from November 15, 2018 until the day on which judgment is entered]; plus
    - $698.42 x [number of days from September 15, 2020 until the day on which judgment is entered]; plus
    - $604.58 x [number of days from October 1, 2021 until the day on which judgment is entered].

- That Plaintiff recover post-judgment interest from Defendants on the amounts awarded herein at the annual rate applicable at the date a final judgment is entered;

- That Plaintiff recover attorney's fees from Defendants in the amount of $389,287.00; and

- That Plaintiff recover costs from Defendants in the amount of $16,224.91.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on August 16, 2023, at Houston, Texas.

*Christina A. Bryan*
Christina A. Bryan
United States Magistrate Judge